## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| JustFly Corp., *et al*., | Case No. 20—11204 (JTD) |
| Debtors in a foreign proceeding.[1] | Joint Administration Requested |

## MOTION FOR RECOGNITION OF FOREIGN MAIN
## PROCEEDING AND REQUEST FOR CERTAIN RELATED RELIEF

FlightHub Group Inc., in its capacity as the duly-appointed foreign representative (the "**Foreign Representative**") for the above-captioned debtors (collectively, the "**Debtors**"), which are the subject of proceedings (the "**Canadian Proceeding**") currently pending before the Superior Court of Québec, in the Province of Québec, District of Montreal (the "**Canadian Court**") commenced pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, C-36 (as amended, the "**CCAA**"), has commenced the above-captioned chapter 15 cases (the "**Chapter 15 Cases**") ancillary to the Canadian Proceeding and submits this motion (this "**Motion**" and, together with the *Voluntary Chapter 15 Petitions* (the "**Chapter 15 Petitions**") filed contemporaneously herewith) for entry of an order, substantially in the form attached hereto as <u>**Exhibit A**</u> (the "**Proposed Order**"), recognizing the Canadian Proceeding and for certain related relief.

---

[1]    The Debtors in the chapter 15 proceedings and the last four digits of their federal tax identification numbers are: JustFly Corp. (4113), FlightHub Group Inc. (9062), FlightHub Service Inc. (8072), JustFly Inc. (4194), SSFP Corp. (7744), and 11644670 Canada Inc. (2537). The location of the Debtors' corporate headquarters and the Debtors' foreign representative is: 3333 boul de la Côte-Vertu, Suite 600, Montreal / Saint-Laurent, Québec, Canada H4R 2N1.

## PRELIMINARY STATEMENT[2]

1.    The Foreign Representative has commenced the Chapter 15 Cases on behalf of the Debtors to ensure the success of a comprehensive restructuring that involves approximately CAD$45 million of funded debt. This restructuring will further seek to preserve jobs for several employees in Canada and the United States.

2.    Pursuant to this Motion, the Foreign Representative requests recognition and enforcement of the relief requested before the Canadian Court pursuant to which the Debtors intend to, among other things, file with the Canadian Court a "plan of compromise or arrangement" (the "**Plan of Arrangement**") in accordance with the CCAA. The Plan of Arrangement is similar to the chapter 11 plans typically filed in United States chapter 11 bankruptcies.

3.    The Foreign Representative respectfully submits that the substantive purpose of chapter 15 will be fulfilled here by granting recognition to the rulings of the Canadian Court as requested herein. *See* 11 U.S.C. § 1501(a)(1). As set forth in the Cave Declaration, all stakeholder recoveries would likely be substantially reduced, and the Debtors' viability as a going concern put into jeopardy, if the relief requested herein is not granted. Accordingly, and consistent with the objectives of chapter 15 of the Bankruptcy Code, the Foreign Representative commenced the Chapter 15 Cases to obtain recognition of the Canadian Proceeding and to give full recognition and enforcement to the Canadian Orders and the expected plan, which will be voted on by the creditors and confirmed by the Canadian Court.

---

[2]    Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meaning ascribed to such terms elsewhere in this Motion.

## RELIEF REQUESTED

4.      By this Motion, the Foreign Representative requests entry of the Proposed Order, pursuant to sections 105(a), 1504, 1507, 1510, 1515, 1517, 1520, 1521, and 1522 of title 11 of the United States Code (the "**Bankruptcy Code**") (a) granting recognition of the Canadian Proceeding as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code; (b) granting recognition of the Foreign Representative as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Canadian Proceeding; (c) recognizing, granting comity to, and giving full force and effect in the United States to the Canadian Proceeding and the orders entered therein (collectively, the "**Canadian Orders**"); and (d) affording the Debtors the protection of the automatic stay under section 362 of the Bankruptcy Code. The relief requested in this Motion is without prejudice to any additional relief the Foreign Representative may request.

5.      In support of this Motion, the Foreign Representative refers the Bankruptcy Court to (a) the *Declaration of Christopher Cave in Support of Motion for Recognition of Foreign Main Proceeding and Request for Certain Related Relief* [Docket No. 3] (the "**Cave Declaration**") and (b) the *Declaration of Joseph Reynaud as Canadian Counsel to the Debtors in Support of Motion for Recognition of Foreign Main Proceeding and Request for Certain Related Relief* [Docket No. 4] (the "**Reynaud Declaration**") filed contemporaneously herewith and incorporated herein by reference.

## JURISDICTION

6.      The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Recognition of a foreign

proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

7.      The Foreign Representative, in its capacity as authorized foreign representative, has properly commenced the Chapter 15 Cases pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007.

8.      The Foreign Representative consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.      Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. § 1410.

## **BACKGROUND**

### I.      **Overview of the Debtors' Business**

10.     The Debtors are a flight-centric online travel agency that utilize a mobile site, application, and a platform allowing self-serve capabilities for users and customer agents to facilitate the sale of airline tickets, among other products. The Debtors operate two leading brands: "FlightHub," which is focused in Canada, and "JustFly," which is focused in the United States. The "FlightHub" brand was initially launched at the inception of the Debtors in 2012. The "JustFly" brand was created in 2014, when the Debtors decided to capitalize on their Canadian success by expanding to penetrate the United States market. JustFly offered United States international flights as of 2014 and offered United States domestic flights as of 2015.

11.     The Debtors have experienced significant growth since 2012. In 2019 alone, the Debtors served more than 5 million customers and sold more than CAD$3 billion in gross merchandising volume.

12.     Headquartered in Montreal, the Debtors have business relationships with hundreds of outsourced travel agents. A substantial portion of the Debtors' workforce has been placed on leave as a result of the Debtors' efforts to cut costs in the wake of the global COVID-19 pandemic, and the Debtors have also been forced to reduce the number of relationships with outsourced travel agents.

## II.     The Debtors' Corporate Structure

13.     The Debtors operate through three wholly-owned subsidiaries: FlightHub Services Inc., SSFP Corp., and JustFly Inc. JustFly Inc. has two wholly-owned subsidiaries of its own: 11644670 Canada Inc., and JustFly Corp. These entities collectively are the Debtors.

14.     The activities carried on by each of the Debtors are the following:

- FlightHub Group Inc. is essentially a software provider, which owns and makes available to the entities of the group the software required to run their various platforms;

- FlightHub Services Inc. provides contact center management and technology solutions;

- SSFP Corp. provides fraud prevention services regarding the online transactions made on the group's websites (flighthub.com and justfly.com);

- JustFly Inc. is the online travel agency;

- JustFly Corp. is the entity that processes US credit card transactions for JustFly Inc.; and

- 11644670 Canada Inc. is an online travel agency that is not currently operating.

## III.     The Debtors' Capital Structure

### A.     The Debtors' Assets

15.     The current assets of the Debtors are mainly comprised of cash on hand and accounts receivable (CAD$6.4 million, including a CAD$1.5 million doubtful account for which no provision has been accounted for as of April 30, 2020).

16.    The Debtors have intangible assets (mostly intellectual property), which have not been evaluated since the beginning of the COVID-19 crisis. The value of these intangible assets has likely been significantly impaired by the current market conditions.

### B.    The Debtors' Indebtedness

17.    On July 5, 2019, the FlightHub Group Inc., as borrower and successor by merger into and with 7513283 Canada Inc. and 11365649 Canada Inc., as borrowers, and Toronto-Dominion Bank ("**TD**"), as lender, entered into a Credit Agreement, as amended by a First Amendment to the Credit Agreement dated as of July 5, 2019 (the "**Credit Agreement**").

18.    The Credit Agreement provided for the provision of a CAD$45 million revolving operating credit facility (the "**Secured Loan**"). FlightHub Services Inc., SSFP Corp., JustFly Inc., and JustFly Corp. are guarantors under the Credit Agreement (collectively, the "**Obligors**").

19.    The Credit Agreement was entered into by the Obligors with TD in the context of a reorganization of the Debtors carried out in 2019, whereby the majority of the shareholders agreed to buy-back certain minority shareholders and certain entities of the group were amalgamated.

20.    The Credit Agreement provided for the issuance of letters of credit for the benefit of third-parties, not to exceed an aggregate amount of CAD$10 million. As of the date of the Canadian Proceeding, a number of letters of credit were still issued for the account of the Debtors by TD, representing a total amount of CAD$2,208,560.

21.    The Secured Loan is secured by: (a) a first-ranking lien on all present and future movable property of the Obligors; (b) a general security agreement creating a lien on all assets of the Obligors in jurisdictions outside of Québec where any Obligor has a head office or where its assets may be located; (c) security over the intellectual property of the Obligors with the

Canadian Intellectual Property Office and the United States Patent and Trademark Office; and (d) a pledge on all issued and outstanding shares held by shareholders of the Obligors.

22.     To avoid a liquidation process that could have been engaged by TD if a default was triggered under the Secured Loan given the difficult circumstances created by the COVID-19 outbreak, and to provide the breathing room required for the Debtors to undertake a comprehensive restructuring for the benefit of all of its stakeholders, certain shareholders of the Debtors proceeded to purchase TD's interests and rights in the Secured Loan through the company 11656503 Canada Inc. (the "**Secured Creditor**"), including all of the security interests registered by TD over the assets of the Debtors.

23.     In parallel with this, as part of the same transaction, a distinct entity controlled by certain shareholders of the Debtors, 11656511 Limited Partnership (the "**LP Lender**"), agreed to loan CAD$4,000,000 to the Debtors to facilitate a restructuring of the Debtors.

24.     The proceeds from the loan of the LP Lender are secured by a lien on all of the assets of FlightHub Group Inc. and will be used in part as cash collateral to secure the Letters of Credit issued by TD, which the Debtors need to maintain to operate in the normal course, with the balance of the proceeds to be used by the Debtors to finance their restructuring and ongoing operations.

25.     The Debtors' management is confident that the transaction with TD, the resources made available by the LP Lender, the protection afforded by the CCAA and the relief sought in the Canadian Proceeding and the Chapter 15 Cases, will provide the Debtors with an ability to comprehensively restructure their operations and ultimately emerge in an enhanced financial posture.

**IV.**    **Events Leading to Restructuring**

26.    The overarching event at the root of the Debtors' current financial difficulties is the outbreak of the respiratory disease known as "COVID-19."

27.    On January 30, 2020, the International Health Regulations Emergency Committee of the World Health Organization ("**WHO**") declared the outbreak a "public health emergency of international concern."

28.    On March 11, 2020, the WHO publicly characterized COVID-19 as a pandemic. Sanitary authorities worldwide are unable to predict the duration of this pandemic, and it is expected that its pervading effects on the airline and travel industry, amongst others, will endure for several months.

29.    Almost all governments worldwide have imposed and enforced, among other confinement measures, severe travel restrictions.

30.    The consequences suffered by the air travel industry, and more generally by the tourism industry, have been catastrophic, and the Debtors are being severely impacted by the crisis.

31.    Whereas Debtors had been profitable since the beginning and their revenues had continued to grow at a steady pace, these revenues abruptly decreased by more than 90% in less than two months. In addition to the significant reduction in revenues from new reservations, many of the previous reservations made by customers prior to the COVID-19 outbreak have been cancelled, leading to a significant loss in previously recorded revenues.

32.    While the Debtors hope that the travel industry will be able to restart its operations as soon as possible, the current measures in place in numerous countries around the world and the progress of the disease are such that the Debtors are left with a greatly reduced revenue stream and are therefore unable to meet their obligations as they become due.

33.     On April 30, 2020, given that approximately CAD$15 million became due to several of the group's suppliers, the Debtors were left with no other option than to file the Canadian Proceeding to urgently stay these claims and undertake restructuring measures.

34.     Accordingly, the Foreign Representative and the Debtors believe, and respectfully submit, that the recognition of Foreign Main Proceeding commenced under the CCAA constitutes the best option available in the circumstances to preserve the value of their assets, for the benefit of their creditors and stakeholders.

## V.      The Canadian Proceeding

35.     On May 7, 2020, JustFly Inc. sent a "notice to creditors" attached hereto as **Exhibit B** of its intention to make a proposal to its creditors as required by section 50.4(1) of the *Bankruptcy and Insolvency Act* (the "**BIA**" and the "**BIA Proceedings**"). Attached to that notice was a list of the names of known creditors with claims amounting to CAD$250 or more and the amounts of their claims.

36.     The Debtors acknowledged that the Debtors have several stakeholders in the United States, and that, accordingly, they have contemplated that recognition of the Canadian Proceeding may be sought in the United States "pursuant to Chapter 15 of the US Bankruptcy Code." Thus, the Debtors are seeking orders that are "customary in the circumstances."

37.     On May 8, 2020, the Canadian Court issued, pursuant to an application made by the Debtors, an Initial Order pursuant to the CCAA, which Initial Order was amended and restated on May 19, 2020 and is attached hereto as **Exhibit C** (the "**Initial Order**"), which provided that the Debtors:

> shall be authorized to apply as they consider necessary or deliberate, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders with aid and complement this Initial Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the U.S. Bankruptcy Code, for which

FlightHub Group Inc. shall be the foreign representative of the Debtors. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to each of the [Debtors] as may be deemed necessary and appropriate for that purpose.

38.     The Foreign Representative has caused the Debtors to commence the Chapter 15 Cases. The Foreign Representative respectfully submits that recognition is necessary to facilitate the restructuring and to achieve the more fundamental objectives of chapter 15 itself, including: (a) protecting the interests of creditors by facilitating completion of the proposed restructuring; (b) preserving the Debtors' operations as a going concern; (c) preserving the jobs of employees; (d) providing certainty for the creditors who have agreed to support the Debtors through their own undertakings and commitments; and (e) facilitating cooperation through established principles of comity recognizing the efficacy of Canadian CCAA proceedings under United States law.

39.     The Initial Order authorizes the Debtors, among other provisions, to "file with [the Canadian] Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the "Plan") in accordance with the CCAA." Initial Order at ¶ 8.

40.     In addition, the Initial Order provides relief similar to and consistent with the relief provided by the Bankruptcy Code, including:

- permitting the Debtors to file with the Canadian Court and to submit to their creditors one or more plans of compromise or arrangement in accordance with the CCAA;

- ordering a stay of proceedings against the Debtors until July 31, 2020 (which stay may be extended);

- ordering counterparties who have verbal or written agreements with the Debtors to continue providing services to the Debtors and forbidding them from discontinuing those services until allowed by the Canadian Court;

- appointing the Monitor to, among other responsibilities: (a) continue providing notice to creditors; (b) assist the Debtors in dealing with their creditors; (c) review the Debtors' business and assess opportunities for cost reduction, revenue

enhancement and operating efficiencies; and (d) otherwise assist the Debtors with the restructuring.

*Id*. at ¶¶ 8, 24.

## BASIS FOR RELIEF REQUESTED

### I.  The Debtors Are Eligible for Chapter 15

### A.  Each of the Debtors Meet the requirements to Be United States "Debtors" Under Section 109(a) of the Bankruptcy Code

41.     Certain courts in this district have held that the requirements of section 109(a) of the Bankruptcy Code do not apply to debtors seeking chapter 15 relief. *See, e.g.*, Hr'g Tr. 8:19-9:10, *In re Bemarmara Consulting A.S.,* Case No. 13-13037 (Bankr. D. Del. Dec. 17, 2013), Docket No. 38 (holding section 109(a) did not apply to chapter 15 proceeding); *In re Metinvest B.V.*, Case No. 17-10130 (LSS) (Bankr. D. Del. Feb. 8, 2017), Docket No. 19 (same). Admittedly, the United States Court of Appeals for the Second Circuit has taken a different approach. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 251 (2d Cir. 2013) (holding that section 109(a) applies in the chapter 15 context).

42.     To the extent section 109(a) of the Bankruptcy Code is applicable in chapter 15, the requirements set forth therein are satisfied here. Under section 109(a) of the Bankruptcy Code, a corporate entity is eligible to be a "debtor" under the Bankruptcy Code where it has "property in the United States." Section 109(a) does not require a specific quantum of property in the United States, nor does it impose a minimum on how long such property must have had situs in the United States. *See*, *e.g.*, *In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000) ("Therefore, the Court concludes that . . . the language of § 109(a) is clear, and the Court does not have discretion to look behind the language and declare that the quantity of property in the United States will be decisive of eligibility to be a debtor under the Code.").

43.     Two of the Debtor entities—SSFP Corp. and JustFly Corp.—are Delaware corporations. Thus, the Debtors have assets in the United States, and, more specifically, in this district, by virtue of those United States subsidiaries. Further, the Debtors have an interest in certain funds deposited with McDonald Hopkins LLC and Bielli & Klauder, LLC, as United States counsel to the Debtors in connection with the Chapter 15 Cases, which funds are held in accounts in the United States.

44.     Professional retainers on deposit in bank accounts located in the United States are "property in the United States" under section 109(a) of the Bankruptcy Code. *See e.g.*, *In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 200 (Bankr. D. Del. 2015); *In re Glob. Ocean Carriers Ltd.*, 251 B.R. at 39; *In re B.C.I. Fins. Pty Ltd.*, 583 B.R. 288, 293–96 (Bankr. S.D.N.Y. 2018). Accordingly, the Debtors are each an eligible debtor under section 109(a) of the Bankruptcy Code if such provision is, in fact, applicable here.

### B.     Section 1517(a) of the Bankruptcy Code Is Satisfied

45.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517. Each requirement is met here.

### 1.     The Canadian Proceeding Is a "Foreign Proceeding" under Section 1502 of the Bankruptcy Code

46.     The Canadian Proceeding is a "foreign proceeding" under section 101(23) of the Bankruptcy Code and, as such, satisfies the first condition for entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a

foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23); *see In re ABC Learning Centres Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013) (delineating the elements of the definition of "foreign proceeding" per section 101(23)). Section 1502(3) of the Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."

47.     Courts in this jurisdiction and across the United States have uniformly recognized Canadian CCAA proceedings as "foreign proceedings" under chapter 15 of the Bankruptcy Code. *See, e.g., In re Motorcycle Tires & Accessories LLC*, No. 19-12706 (KBO) (Bankr. D. Del. Jan. 22, 2020) [Docket No. 38]*; In re Unique Broadband Systems Ltd.*, No. 19-11321 (BLS) (Bankr. D. Del. July 8, 2019) [Docket No. 18]; *In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013); *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010); *Collins v. Oilsands Quest Inc.*, 484 B.R. 593 (S.D.N.Y. 2012).

### i.     The Canadian Proceeding Is a "Proceeding"

48.     The hallmark of a "proceeding" is a "statutory framework that contains [sic] a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice." *Flynn v. Wallace (In re Irish Bank Resolution Corp.)*, 538 B.R. 692, 697 (D. Del. 2015) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009)). The Canadian Proceeding is governed by the statutory framework set forth in the CCAA. As detailed in the Reynaud Declaration, the CCAA specifies the acceptable procedures for implementing a Canadian restructuring, including commencing the restructuring, designating classes of creditors, holding meetings, and voting. The CCAA also sets forth the standards for

approval of Canadian restructuring proposals. Here, the Initial Order provided that MNP LTD (the "**Monitor**") be appointed to monitor the business and financial affairs of the Debtors, and required the Monitor to send "within ten (10) business days after the transmission of this Initial Order, in the prescribed manner, including by electronic transmission, a notice to all known creditors having a claim against the Debtors of more than [CAD]$1,000, advising them that this Initial Order is publicly available." Initial Order at ¶ 24(a). The Monitor is also required to "prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder . . . ." *Id.* The Canadian Proceeding is, therefore, a "proceeding." *See, e.g.*, *In re Irish Bank Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *12–13 (Bankr. D. Del. Apr. 30, 2014), *aff'd*, 538 B.R. 692 (D. Del. 2015).

### ii.   The Canadian Proceeding Is Judicial in Character

49.   In assessing whether a foreign bankruptcy proceeding is judicial in character, a United States Bankruptcy Court reviewed the following elements:

> There are two mandatory court appearances, the first, on the *ex parte* summons to convene the class meetings and the second, on the sanctioning of the scheme. . . . Both hearings required the court to review the materials submitted and evaluate them. . . . With regard to the second hearing, . . . the court plays a significant role in that it must assure itself that the scheme is in the best interests of creditors and members. Lastly, creditors and members had a plethora of opportunities to object to the scheme before it was sanctioned . . . .

*In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 52 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002).

50.   Similarly, here, the Canadian Court, a Canadian judicial body, has issued the Initial Order, in which the Canadian Court states that the Debtors may submit to their creditors one or more plans of compromise or arrangement in accordance with the CCAA. Likewise, and

as described herein, the Canadian Court appointed the Monitor and ordered the Monitor to give notice of the proceedings to the creditors. The creditors will have the opportunity to provide input on a proposed restructuring plan, and raise objections before the Canadian Court, such that the rights of the creditors are protected.

### iii. The Canadian Proceeding Is Collective in Nature

51. A proceeding is "collective" if it considers the rights and obligations of all creditors. *See In re ABC Learning Centres Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301, 308 (3d Cir. 2013) (finding an Australian liquidation proceeding collective in nature because the liquidator was required to "consider the rights of all the creditors in distributing assets" and "distribute assets according to priorities on a pro rata basis"); *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638–39 (Bankr. S.D.N.Y. 2018) (finding a foreign proceeding "collective" in nature where the plain language of the applicable statute required findings that it was in the interest of the joint creditors).

52. There is no serious debate in the caselaw or practice that Canadian CCAA proceedings are "collective" in nature. Like the Australian proceeding discussed herein, the Canadian Proceeding will "consider the rights of all the creditors in distributing assets" as Canadian law requires CCAA debtors to hold separate meetings for the classes of creditors. Creditors have the opportunity to attend and vote in favor of a restructuring plan. The Canadian Proceeding is, therefore, collective in nature.

### iv. The Canadian Proceeding Is Located in a Foreign Country

53. The Initial Order was issued by the Canadian Court in Canada, the creditor meetings will take place in Canada, and the required hearings will be held before the Canadian Court in Canada. Therefore, there can be no doubt that the Canadian Proceeding is located in Canada, a foreign country.

### v. The Canadian Proceeding Subjects the Debtors to Supervision of a Foreign Court

54.     "[T]he requirement that the debtor's assets be subject to the control and supervision of a foreign court does not require that the foreign proceedings play out entirely in a judicial context like cases under the Bankruptcy Code. *The ability of a party to ask for court assistance concerning the proceeding is sufficient to satisfy this element*." 8 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1501.03(1) (16th ed. Rev. 2019) (emphasis added); *see ABC Learning Centres*, 445 B.R. at 332 (finding a "proceeding" to be subject to supervision of a foreign court where provisions allow interested parties to seek relief from the court).

55.     The Canadian Proceeding clearly meets this minimal standard. The entire CCAA proceeding is court supervised. Upon a vote by the creditors approving any proposed plan of reorganization, the Canadian Court must then approve the plan as a final step. Upon Canadian Court approval, the company subject to a CCAA proceeding continues forward under the plan until it has satisfied the plan's requirements.

### vi. The Canadian Proceeding Is Intended to Facilitate a Reorganization

56.     The Canadian Proceeding is an essential component of a restructuring by which the Debtors will reorganize their capital structure, preserve the jobs of their employees, and reorganize as a going concern. There can be no reasonable dispute that the Foreign Proceeding is a proceeding for the purposes of reorganization.

### C. The Canadian Proceeding Is a "Foreign Main Proceeding"

57.     Section 1502(4) defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." *See* 11 U.S.C. § 1502(4). The Bankruptcy Code does not define the term "center of main interests" ("**COMI**") but section 1516 establishes the presumption that COMI is the place of the debtor's registered

office. 11 U.S.C. § 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests."). Where this statutory presumption does not apply, courts have generally considered a number of factors to determine COMI, including: (a) the location of the debtor's headquarters; (b) the location of those who actually manage the debtor (which, conceivably, could be the headquarters of a holding company); (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and (e) the jurisdiction whose law would apply to most disputes. *See In re Irish Bank Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *16 (Bankr. D. Del. Apr. 30, 2014); *ABC Learning Centres*, 445 B.R. at 333 (citing *In re Bear Stearns*, 389 B.R. 325 (S.D.N.Y. 2008)).

58.     Here, there are six debtors. Four of the six debtors are organized under the laws of Canada and are located in Montreal, including the owners of each of the United States subsidiaries. The Debtors' headquarters are in Canada. The vast majority of the Debtors' employees are located in Canada. The Bankruptcy Court may, therefore, presume the Debtors' COMI is Canada. *See* 11 U.S.C. § 1516(c). Furthermore, in its Initial Order, the Canadian Court already has ruled that the Debtors' COMI is located in Montreal, Québec, Canada. Accordingly, the Canadian Proceeding qualifies as a foreign main proceeding and, thus, the first element of section 1517(a) of the Bankruptcy Code is satisfied.

**D.     The Chapter 15 Cases Were Commenced by a Duly-Authorized "Foreign Representative"**

59.     For a recognition motion to be granted, a foreign debtor's application for recognition must be made by a "foreign representative" who is a person or body. *See* 11 U.S.C. §§ 1515(a), 1517(a)(2). Section 101(24) then defines "foreign representative" as follows:

The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to

administer the reorganization or the liquidation of the debtor's assets or affairs or
to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). Section 1516(a) of the Bankruptcy Code provides that "[i]f the decision

[commencing the foreign proceeding] . . . indicates . . . that the person or body is a foreign

representative, the court is entitle to so presume."

60.     Under section 101(41) of the Bankruptcy Code, the term "person" includes a
corporation. Here, the Canadian Court has authorized FlightHub Group Inc., a corporation, to act
as foreign representative and to apply for recognition of the CCAA Proceeding in the Bankruptcy
Court pursuant to the Initial Order. Accordingly, FlightHub Group Inc. is qualified to be the
foreign representative.

### E.     The Chapter 15 Petitions and Accompanying Documents Satisfy Section 1515 and Bankruptcy Rule 1007(a)(4)

61.     The Foreign Representative properly commenced the Chapter 15 Cases by filing
the Chapter 15 Petitions in accordance with section 1515(a) of the Bankruptcy Code,
accompanied by all documents and information required by Bankruptcy Rule 1007(a)(4) and
sections 1515(b) and (c) of the Bankruptcy Code, including this Motion. Under sections 1515(b)
and (c) of the Bankruptcy Code:

(b)     A petition for recognition shall be accompanied by—

(1)     a certified copy of the decision commencing such foreign
proceeding and appointing the foreign representative;

(2)     a certificate from the foreign court affirming the existence of
such foreign proceeding and of the appointment of the foreign
representative; or

(3)     in the absence of evidence referred to in paragraphs (1) and
(2), any other evidence acceptable to the court of the existence of such
foreign proceeding and of the appointment of the foreign
representative.

(c)     A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

11 U.S.C. § 1515(b)–(c). Bankruptcy Rule 1007(a)(4) requires that a chapter 15 petition include: (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1 and (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, (ii) all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code.

62.     In accordance with section 1515(b) of the Bankruptcy Code, the Foreign Representative annexed to the Chapter 15 Petitions and the Cave Declaration a certified copy of the Initial Order, confirming the commencement of the Canadian Proceeding, the Chapter 15 Cases, and the appointment of the Foreign Representative. In addition, the Chapter 15 Petitions and accompanying documents include all documents and information required by the Bankruptcy Code, Bankruptcy Rules, and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"). Accordingly, the Foreign Representative has satisfied the requirements of sections 1515(b) and (c) of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

## II.     The Relief Requested by this Motion Achieves the Bankruptcy Code's Objectives and Policy

63.     The purpose of chapter 15 is set forth in section 1501 of the Bankruptcy Code and includes:

(1) cooperation between (A) courts of the United States, the United States trustees, trustees, examiners, debtors, and debtors in possession; and (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (2) greater legal certainty for trade and investment; (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; (4)

protection and maximization of the value of the debtor's assets; and (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.

64.     The relief requested in this Motion achieves these objectives. Recognizing the Canadian Proceeding promotes the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all affected parties. Recognition will centralize the process of resolving any residual claims against the Debtors in Canada. Claims will be treated in accordance with the CCAA, which comports with Canadian law and is similar to comparable United States laws, and any disputes will be subject to the uniform jurisdiction of one tribunal—the Canadian Court.

65.     In particular, recognition will further promote the "protection and maximization of the debtor's assets" and facilitate the "rescue of troubled businesses." *Cf.* 11 U.S.C. § 1501(a)(4)–(5). The Foreign Representative believes that commencing a CCAA proceeding and approving a plan thereunder is the value-maximizing path forward for the Debtors' stakeholders. *Cf.* 11 U.S.C. § 1501(a)(2).

66.     More fundamentally, recognition will facilitate cooperation between courts in Canada and the United States—nations that share a longstanding common law tradition of cooperation and comity, as well as long standing precedent by which Canadian reorganizations are recognized as a matter of United States law.

### III.     The Debtors Should Receive the Protection of the Automatic Stay

67.     If a United States Bankruptcy Court recognizes a foreign main proceeding under chapter 15, section 1520(a)(1) of the Bankruptcy Code provides that actions against the foreign debtor or "property of the debtor that is within the territorial jurisdiction of the United States" are stayed under section 362—the Bankruptcy Code's "automatic stay."

68.     The Debtors currently are parties to litigation commenced against them by the City of San Francisco and are the subject of a Department of Transportation investigation, among other litigation or potential litigation.

69.     If the Bankruptcy Court recognizes the foreign main proceeding, to preserve the value of the Company and the Debtors' assets, the Bankruptcy Court should recognize and apply the automatic stay under section 362 of the Bankruptcy Code.

## NOTICE

70.     Notice of this Motion and related documents will be provided in accordance with the procedures set forth in the *Motion for Entry of Order (A) Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice and (B) Granting Related Relief* (the "**Scheduling Motion**") filed contemporaneously herewith. The Foreign Representative respectfully submits that no further notice is required.

## NO PRIOR REQUEST

71.     No previous request for the relief sought herein has been made by the Foreign Representative to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Foreign Representative respectfully requests that the Bankruptcy Court grant this Motion and enter the Proposed Order, (a) granting recognition of the Canadian Proceeding as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code, (b) granting recognition of the Foreign Representative as the "foreign representative" in respect of the Canadian Proceeding, (c) recognizing, granting comity to, and giving full force and effect in the United States to the Canadian Proceeding and the Canadian Orders, (d) affording the Debtors the protection of the automatic stay under section 362 of the Bankruptcy Code, and (e) granting such other and further relief as is appropriate under the circumstances.

Dated: May 22, 2020
Wilmington, Delaware

BIELLI & KLAUDER, LLC

/s/ David M. Klauder
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, Delaware 19801
Phone: (302) 803-4600
Facsimile: (302) 397-2557
Email: dklauder@bk-legal.com

- and –

MCDONALD HOPKINS LLC
Marc J. Carmel (*pro hac vice* admission pending)
Serena G. Rabie (*pro hac vice* admission pending)
300 North LaSalle Street
Suite 1400
Chicago, Illinois 60654
Telephone: (312) 280-0111
Facsimile: (312) 280-8232
Email:  mcarmel@mcdonaldhopkins.com
            srabie@mcdonaldhopkins.com

*Counsel for the Foreign Representative*